```
                IN THE UNITED STATES DISTRICT COURT
               FOR THE NORTHERN DISTRICT OF ILLINOIS
                          EASTERN DIVISION
```

JORDAN MILLER,                     )
                                   )
            Plaintiff,             )
                                   )
      v.                           )       No.  13 C 1601
                                   )
VILLAGE OF SCHAUMBURG, et al.,     )
                                   )
            Defendants.            )

<u>MEMORANDUM OPINION AND ORDER</u>

Just four days after pro se plaintiff Jordan Miller ("Miller") had filed this action against the Village of Schaumburg ("Village") and two of its former officers, charging those officers with violations of his constitutional rights actionable under 42 U.S.C. §1983 ("Section 1983"), this Court issued a brief March 5, 2013 memorandum order ("Order") that raised a potential statute of limitations problem lurking in Miller's allegations. At the conclusion of the Order this Court directed Miller "to file promptly a supplement to his original Complaint that fleshes out the dates (or approximate dates) of the ex-officers' further harassment of Miller and his family."

Instead of following that directive, on March 8 Miller (this time represented by counsel) filed a First Amended Complaint ("FAC") that expanded on his original claim, again invoked Section 1983 as the principal gravamen and jurisdictional basis for his lawsuit. But what Miller's counsel has accomplished by that filing is simply to reconfirm the suspicions that had

originally triggered this Court's Order.

To begin with a collateral issue, Miller's counsel has totally ignored the opening substantive matter dealt with in the Order, which explained why no Section 1983 liability could attach to the Village. What counsel has done in the FAC is to advance against the Village a purported <u>Monell</u> claim (Count III) and a state-law indemnification claim under 745 ILCS 10/9-102 (Count IV). That appears to reflect in whole or in part the regrettable notion that a lawyer's obligation is to fit the facts to the law (including any necessary reshaping of the "facts"), rather than the other way around. Some explanation of this pejorative characterization is of course in order, and this opinion accordingly first turns to that subject regarding Count III.

Miller's original filing had characterized the two officer defendants--Terrance O'Brien ("O'Brien") and Matthew Hudak ("Hudak")--as truly rogue officers, engaged in a course of vengeful conduct toward Miller. Now, somewhat in the same fashion that the alchemists of the Middle Ages sought unsuccessfully to transmute base metal into gold, Miller's counsel would have it that such conduct was a matter of routine within the Village's police force as to which the Village itself was deliberately indifferent.

Fed. R. Civ. P. ("Rule") 11(b) and 28 U.S.C. §1927 set standards of both subjective and objective good faith for

lawyers' conduct (the former provision is limited to court filings, while the latter is not). If and to the extent that Miller's counsel possesses a good faith predicate for the transmutation reflected in FAC Count III, he is ordered to file a statement identifying that predicate on or before April 12, 2013 to avoid embroiling the Village in the expense and inconvenience of litigation in the possible absence of a good faith basis for doing so.

Moreover, the purported Count III <u>Monell</u> claim is of course advanced under Section 1983, the same jurisdictional source that Miller's original pro se Complaint sought to invoke--and importantly that is also specifically true of FAC Count II as well, a count that charges former officers O'Brien and Hudak with just one alleged constitutional violation, an unreasonable search of Miller's home in May <u>2010</u> (FAC ¶¶14-24). But both such claims, grounded as they are in a nearly three-year-old event, run head on into the two-year statute of limitations for Illinois-based Section 1983 violations--the very issue that this Court's Order identified in its directive quoted in the first paragraph of this opinion. What the FAC has done in the fleshing-out process is to confirm that the officers' activity targeting Miller, about which both the original Complaint and the FAC complain, has indeed been outlawed by limitations and thus cannot support any Section 1983 claim.

3

That leaves FAC Count I for consideration next. In that count Miller's counsel again seeks to play alchemist by recasting the officers' activities as violations of RICO (18 U.S.C. §§1961 through 1968[1]), so as to give rise to a civil remedy under Section 1964(c). That effort may be imaginative, but it founders on the shoals of the fundamental principle that the "enterprise" adverted to in Section 1962(c)--the RICO provision on which Miller must seek to rely--must be distinct from the "person" who allegedly violates that section.

That principle was established more than a quarter century ago by the Supreme Court's affirmance (473 U.S. 606 (1985)) of our Court of Appeals' opinion in Haroco v. Am. Nat'l Bank & Trust Co., 747 F.2d 384, 399-40 (7th Cir. 1984).[2] In this instance FAC ¶51 expressly states "[t]he racketeering enterprise in this cause of action are Defendants O'BRIEN and HUDAK," and those two defendants are of course also the persons sought to be held liable under RICO. Hence Miller's counsel's attempt to bring his client into court under RICO has resulted instead in talking his

---

[1] Further citations to RICO provisions will simply take the form "Section --," omitting the prefatory 18 U.S.C.

[2] As chance would have it, this Court's opinion in Parnes v. Heinold Commodities, Inc., 548 F.Supp. 20, 23-24 (N.D. Ill. 1982) was one of the two cases by which the Court of Appeals said that it was persuaded "that section 1962(c) requires separate entities as the liable person and the enterprise which has its affairs conducted through a pattern of racketeering activity" (747 F.2d at 400).

4

way out of court on such a claim.

This opinion has deliberately left FAC Count IV for the last, not just because of its placement in the FAC but because Village's duty of indemnification becomes a realistic matter only if O'Brien or Hudak or both has or have substantive liability to Miller. What has been said up to this point negates any such underlying liability, rendering the prospect of indemnification totally hypothetical.[3]

This action is set for a status hearing at 9 a.m. April 19, 2013.[4] At that time Miller's counsel will be expected to explain any predicate for the continuation of this litigation.

_____
Milton I. Shadur
Senior United States District Judge

Date:  March 28, 2013

---

[3] It does not seem to have occurred to Miller's counsel that by charging O'Brien and Hudak with criminal conduct in his effort to bring RICO into play he may well have deprived them of any right of indemnification under Illinois law--see the discussion by the Illinois Supreme Court in Wright v. City of Danville, 174 Ill.2d 391, 399-404, 675 N.E.2d 110, 115-17 (1996).

[4] This Court recognizes that none of the defendants has yet appeared in this action, so that this opinion does not order participation on their part in the status hearing referred to in the text. Nonetheless the order here extends to Miller's counsel in all events.